## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.:

Joybees LLC,

        Plaintiff,

v.

Crocs, Inc.,

        Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Joybees LLC ("Joybees"), by and through their undersigned counsel, complains against Defendant Crocs, Inc. ("Crocs") as follows:

### SUMMARY OF CLAIMS

1.    This case is about a competitor standing up to an industry giant that is aggressively—and falsely—marketing and promoting its products as protected by patents and design rights that expired or were invalidated long ago in a strategic and calculated effort to deter competition and to maintain its market dominance.

2.    For years, Crocs—an established and well-resourced company—has belligerently touted the existence of enforceable exclusionary rights to intimidate emerging competitors and to signal to the marketplace the superiority of Crocs's molded clogs on the basis that they are protected by an impenetrable wall of intellectual property rights.

3.    One of the patents that historically has been central to Crocs's strategically aggressive enforcement efforts expired more than two years ago. Yet Crocs continued to list this patent—as well as many other long-expired patents and invalidated design rights— on its website and product packaging as covering multiple Crocs products long after Crocs's legal enforcement

term of such rights had ended.

4.      By advertising long-expired patents and invalidated designs as active and enforceable, Crocs falsely conveyed to consumers, retailers, distributors, and competitors alike that Crocs's molded clogs remain superior, unique, and exclusive to Crocs, and that competing footwear products were not only inferior "dupes," but they also carried the risk of infringement. Crocs's messages were untrue and intentionally deceptive. The intellectual property rights Crocs continued to tout as covering its molded clogs were long-expired and unenforceable, and Crocs knew it.

5.      Crocs's false and misleading representations enable Crocs to maintain an unfair advantage in the marketplace by discouraging legitimate competition from smaller competitors who lack the resources to stand up to Crocs and challenge its claims while still offering consumers innovative footwear options with competitive pricing.

6.      Unlike Crocs, Joybees is a newer molded footwear company seeking only to compete on a level playing field.

7.      In view of Crocs's past behavior, Joybees reasonably believed that Crocs would seek to enforce the patent rights Crocs touted on its website and on its product packaging and, based on such belief, delayed launches of lawfully competing products. Joybees' retail customers have also expressed hesitation to purchase Joybees' products out of concern that offering Joybees' molded footwear products for sale would risk reprisals from Crocs. Crocs encouraged this culture of fear through aggressive enforcement efforts and through the dissemination of threatening letters to its retail partners warning that investing in, advertising, and making available for sale any products Crocs deemed to infringe its intellectual property rights would "not be tolerated."

8.      Crocs's false and misleading representations and deceptive advertising campaigns

have misled the marketplace, chilled legitimate competition, and caused Joybees to suffer lost sales, impaired business relationships, and caused reputational harm with retailers, distributors, and consumers.

9.      In an effort to stop Crocs's false representations regarding its intellectual property rights, Joybees put Crocs on notice that Joybees was aware of Crocs's false and misleading representations. In a blatantly strategic attempt to curb its damages after years of deceiving the public, Crocs promptly took down the searchable database that it used to put the public on notice of its patent and design rights on a product-by-product basis but made no effort to correct its false representations. To the contrary, Crocs left language on the page asserting Crocs's "robust intellectual property portfolio" with the threat "DO NOT COPY our products" without any mention of the expired and invalidated rights it had wrongly touted for years as covering its products.

10.      Crocs's conduct violates the Lanham Act and constitutes false advertising and unfair competition because Crocs affirmatively misrepresented the exclusive status of its molded clogs in a manner that was likely to influence consumer and commercial purchasing decisions and was intended to harm legitimate competitors like Joybees. Simply removing the searchable database in no way mitigates the significant damages wrought by Crocs's years of false and misleading representations.

11.      Joybees therefore brings this action to bring Crocs's false and misleading representations into the light, to restore truth and legitimacy to the marketplace, and to stand up to Crocs and hold it accountable for the misleading, deceptive, and unfair practices that has harmed not only Joybees, but also consumers who rely on fair competition and truthful advertising.

## PARTIES

12.     Joybees is a Delaware limited liability company with its principal place of business at 3455 Ringsby Ct., Suite 141, Denver, CO 80216.

13.     Upon information and belief, Crocs is a Delaware corporation with its principal place of business located in Broomfield, Colorado.

## JURISDICTION AND VENUE

14.     This Court has personal jurisdiction over Crocs because the acts alleged occurred, in whole or in part, within this District.  In particular, Crocs has committed tortious acts within the District and committed tortious acts outside the District that have caused injury to Joybees within the District.  The Court also has personal jurisdiction over Crocs because Crocs is a resident of this District and has its principal place of business in this District.

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Joybees asserts claims arising under federal law, specifically under the Lanham Act, 15 U.S.C. § 1125, for false advertising.

16.     With respect to the Colorado Consumer Protection Act claim, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because the state law claim is so closely related to the claims over which the Court has original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Joybees' claims occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Crocs's principal place of business is in this District and Crocs is subject to the Court's personal jurisdiction.

## FACTS RELEVANT TO ALL CLAIMS

18.     Crocs is a large, sophisticated, publicly traded company that sells women's, men's, unisex, and children's molded footwear products, including flip-flops, sandals, and clogs.

19.     Crocs touts itself as a "world leader in innovative casual footwear for all."  In its 2024 10-K Report (dated February 13, 2025), Crocs stated "innovation is not only core to our brands' values; it is at the forefront of how we drive consumer acquisition and engagement."

20.     According to Crocs, its success as a footwear brand relies on its continued innovation in footwear.  In its 2024 10-K Report, Crocs stated that its research and development of footwear materials and designs are a key part of its continued success and growth, and that consumer demand for its products could decline if Crocs failed to introduce technical innovation in its products.

21.     Crocs proclaims on its website that it is the owner of a "robust intellectual property portfolio" that includes patents and design rights and that, according to Crocs, covers Crocs's "innovative footwear and accessories."

22.     In its 2019 10-K Report (dated February 27, 2020), Crocs publicly disclosed one of its key business objectives was to "[u]se and protect the Crocs brand and our other intellectual property in new and existing markets and territories."

23.     Crocs relies on its intellectual property portfolio, including its patent and design rights, as part of its business and marketing strategy to attract new customers, increase consumer demand for its products, increase the number of products sold, increase sales revenues, and maintain majority market share.

24.     Intellectual property rights are such a fundamental tenet of Crocs's customer-facing business and marketing strategies that Crocs specifically calls out its intellectual property rights

on the hang tags that it attaches to its footwear products or product packaging.

25.    In its 2024 10-K Report, Crocs stated publicly that it leverages its intellectual property, including its "signature molding technology," to attract new customers and drive consumer demand for Crocs's footwear products.

26.    According to filings made publicly available by the United States Patent and Trademark Office, Crocs is the owner of at least three hundred U.S. patent publications and issued patents.

27.    Upon information and belief, Crocs has extensive experience with the patent process and is aware of the limited duration of its patent rights.

28.    On the face of the patents, Crocs is the assigned owner of U.S. Patent No. 6,993,858 (the "'858 Patent") and U.S. Design Patent No. D517,789 (the "'789 Patent").

29.    Upon information and belief, the '858 Patent is, in part, directed to Crocs's "signature molding technology."  The Abstract of the '858 Patent states that, "[a]mong other things, the present invention provides various footwear pieces, and methods for manufacturing such pieces."

30.    Crocs utilizes its "signature molding technology" in a variety of footwear products that Crocs markets on the basis of the products' comfort, water-friendliness, ability to dry quickly, and ultra-durability.

31.    The '858 Patent is expired and, as a result, is no longer enforceable.

32.    Since the expiration of the '858 Patent, Crocs has not announced any material changes to its method for manufacturing the pieces for its molded footwear products.

33.    Upon information and belief, the '789 Patent is directed to the design of Crocs's Classic Clog model of footwear products. A side view comparison of the '789 Patent design and

the Classic Clog is below:

| '789 Patent, FIG. 2 | Classic Clog, side view |
|---|---|
|  | |

34.     The '789 Patent is expired and ceased to be enforceable upon expiration.

35.     Since the expiration of the '789 Patent, Crocs has not announced any material changes to any part of the design of the Classic Clog product, including but not limited to any design elements protected by the '789 Patent prior to its expiration.

36.     Upon information and belief, Crocs has not introduced technical innovation to its "signature molding process" since the '858 Patent expired.

37.     Upon information and belief, Crocs has not introduced innovation to the design for its Classic Clog since the '789 Patent expired.

38.     Crocs's efforts to secure patent rights similar to the '858 Patent and the '789 Patent outside of the U.S. have been unsuccessful in many foreign nations due to the existence of prior sales and invalidating prior art.

39.     Crocs's Canada application number CA 2 491 269, as amended on April 26, 2006, included two claims which were identical to claims 1 and 2 of the '858 Patent. On July 28, 2006, the Canadian Intellectual Property Office issued a notice advising Crocs that prior art had been submitted to challenge the patentability of the application pursuant to Section 34.1 of the Canadian Patent Act. On July 28, 2008, the Canadian Intellectual Property Office updated the status of the application to reflect that it was a "Dead Application."

40.    Crocs's Australia application number 2004243118, as amended on April 26, 2006, included two claims which were identical to claims 1 and 2 of the '858 Patent. On September 29, 2006, the Australia Intellectual Property Office issued a notice advising Crocs that prior art had been submitted to challenge the patentability of the application pursuant to Section 27(1) of the Australia Patents Act 1990. On February 5, 2007, the Australia Intellectual Property Office issued a notice advising Crocs that the application had lapsed because it failed to gain acceptance within the prescribed time.

41.    Upon information and belief, Crocs's European Community Design Registration No. 0000257001-0001, which included the same figures as the design claimed in the '789 Patent, was declared invalid by the EUIPO Cancellation Division for a lack of novelty and individual character in January 2024. Upon information and belief, Crocs appealed the EUIPO decision and, in February 2025, the Board of Appeals dismissed Crocs's appeal and upheld the invalidity determination.

42.    Despite its lack of success in obtaining international patent rights similar to the '858 Patent and the '789 Patent, Crocs touted its Classic Clog as "innovative" and unlike any other shoes.

43.    Crocs's representations that its footwear products are "innovative" has enabled Crocs to bolster its brand, drive brand loyalty with consumers, maintain its majority market share, and increase sales of its molded footwear products.

44.    For the year ending on December 31, 2023, Crocs reported revenues in its 2023 10-K Report for its Crocs brand products in the amount of $3,012,954,000.

45.    For the year ending on December 31, 2024, Crocs reported revenues in its 2024 10-K Report for its Crocs brand products in the amount of $3,277,967,000.

46.    For the period between January 1, 2025 and September 30, 2025, Crocs reported revenues in its 2025 8-K Report (dated October 30, 2025) for its Crocs brand products in the amount of $2,557,427,000. For the same time period in the prior year (January 1, 2024-September 30, 2024), Crocs reported revenues in its 2024 8-K Report (dated October 29, 2024) for its Crocs brand products in the amount of $2,515,903,000.

47.    According to Crocs, the Classic Clog is the top-selling Crocs brand footwear product. Upon information and belief, and sales of the Classic Clog contributed significantly to Crocs's reported billions of dollars in revenues in 2024 and 2025.

48.    Upon information and belief, the Classic Clog is no longer protected by patent rights that are enforceable in the U.S.

49.    Upon information and belief, a significant portion of Crocs's reported revenues for its Crocs brand products in 2024 and 2025 are attributable to footwear products that are no longer entitled to patent protection in the U.S.

**Crocs's Patents and Registered Designs**

50.    Upon information and belief, Crocs is the owner of the '858 Patent.  The '858 Patent claims priority to provisional application No. 60/473,360, filed on May 23, 2003, and provisional application No. 60/473,371.

51.    The '858 Patent issued on February 7, 2006 and is subject to a 133-day patent term adjustment under 35 U.S.C. § 154(b) (subject to any disclaimer).  Upon information and belief, the '858 Patent expired on October 3, 2023.

52.    Upon information and belief, Crocs is the owner of the "'789 Patent".  The '789 Patent issued on March 27, 2006 and expired on March 27, 2020.

53.    Upon information and belief, Crocs is the owner of U.S. Design Patent No.

D599,538 (the "'538 Patent"). The '538 Patent issued on September 8, 2009 and expired on September 8, 2023.

54.    Upon information and belief, Crocs is the owner of U.S. Design Patent No. D610,784 (the "'784 Patent"). The '784 Patent issued on March 2, 2010 and expired on March 2, 2024.

55.    Upon information and belief, Crocs is the owner of Argentina Design Registration No. 76865.

56.    Argentina Design Registration was filed on July 30, 2007 and expired on July 30, 2022.

57.    Upon information and belief, Crocs is the owner of Australia Design Registration Nos. 316498 and 316499.

58.    Australia Design Registration No. 316498 was filed on July 30, 2007 and expired on July 30, 2017.

59.    Australia Design Registration No. 316499 was filed on July 30, 2007 and expired on July 30, 2017.

60.    Upon information and belief, Crocs is the owner of Canada Design Registration No. 121695. Canada Design Registration No. 121695 was filed on July 30, 2007, issued on June 9, 2008, and expired on June 9, 2018.

61.    Upon information and belief, Crocs is the owner of European Community Design Registration Nos. 000257001-001.

62.    European Community Design Registration No. 000257001-001 was filed on November 22, 2004. Upon information and belief, Crocs publicly disclosed the design shown in European Community Design Registration No. 000257001-001 prior to the priority date and as a

- 10 -

result, the registered design is invalid and non-enforceable. European Community Design Registration No. 000257001-001 was invalidated on February 28, 2025.

63.    Upon information and belief, Crocs is the owner of India Design Registration No. 214378.

64.    India Design Registration No. 214378 was filed on January 22, 2008. Upon information and belief, India Design Registration No. 214378 had a 15-year term and expired on January 22, 2023.

65.    Upon information and belief, Crocs is the owner of Israel Design Registration No. 44574.

66.    Israel Design Registration No. 44574 was filed on July 29, 2007. Upon information and belief, Israel Design Registration No. 44574 was eligible for a 3-year extension following a 15-year term and expired on or before July 29, 2025.

67.    Upon information and belief, Crocs is the owner of Jordan Design Registration Nos. 1592 and 1603.

68.    Jordan Design Registration No. 1592 was filed on July 29, 2007. Upon information and belief, Jordan Design Registration No. 1592 has a 15-year term and expired on July 29, 2022.

69.    Jordan Design Registration No. 1602 was filed on January 27, 2008. Upon information and belief, Jordan Design Registration No. 1602 has a 15-year term and expired on January 27, 2023.

70.    Upon information and belief, Crocs is the owner of Republic of Korea Design Registration Nos. 30-0396526 and 30-0506471.

71.    Republic of Korea Design Registration No. 30-0396526 was filed on November 24, 2004. Upon information and belief, Republic of Korea Design Registration No. 30-0396526 has a

20-year term and expired on November 24, 2024.

72.     Republic of Korea Design Registration No. 30-0506471 was filed on January 28, 2008. Upon information and belief, Republic of Korea Design Registration No. 30-0506471 expired on January 28, 2024 for non-payment of the required annual maintenance fee.

73.     Upon information and belief, Crocs is the owner of Philippines Design Registration Nos. 3-2007-000450 and 3-2008-000085.

74.     Philippines Design Registration No. 3-2007-000450 was filed on July 27, 2007 and expired on July 29, 2022.

75.     Philippines Design Registration No. 3-2008-000085 was filed on January 24, 2008 and expired on January 31, 2023.

76.     Upon information and belief, Crocs is the owner of Singapore Design Registration Nos. D2007/827/B and D2008/79/F.

77.     Singapore Design Registration Nos. D2007/827/B was filed on January 27, 2007 and expired on January 27, 2022.

78.     Singapore Design Registration Nos. D2008/79/F was filed on January 23, 2008 and expired on January 23, 2023.

**Crocs's Pattern of Enforcement**

79.     Upon information and belief, Crocs's success and market position is attributable to its aggressive assertion and enforcement of its patent rights. According to Crocs's SEC prospectus filed in August 2006, the procurement, maintenance, and broad, aggressive enforcement of its patents were key components of Crocs's business strategy.

80.     Crocs has a documented history of aggressively asserting its patent rights.

81.     Crocs publishes on its website that it is the owner of a "robust intellectual property

portfolio" and that it "aggressively prosecute[s] counterfeiting, intellectual property infringement, and customs seizure actions worldwide."

82.     In its 2016 10-K Report, Crocs stated "[o]ur sales representatives and distributors are also educated on our patents, pending patents, trademarks and trade dress to assist in preventing potentially infringing products from obtaining retail shelf space."

83.     In its 2024 10-K report, Crocs stated that the "[f]ailure to adequately protect our trademarks and other intellectual property rights and counterfeiting of our brands could divert sales, damage our brands' image, and adversely affect our business."

84.     In its 2024 10-K Report, Crocs stated that it relies on its patents to "establish, protect, and enforce [Crocs's] intellectual property rights in [Crocs's] product designs, brands, materials, and research and development efforts" and that Crocs "aggressively" polices its patents and pursues those who infringe upon them, both domestically in the U.S. and internationally, through litigation and otherwise, as Crocs's deems necessary.

85.     Crocs has sent infringement warning letters to retailers and distributors that sell, re-sell, or otherwise distribute Crocs's products.

86.     In a letter to Crocs's retail partners dated March 4, 2021 regarding "Brand Protection—Intellectual Property Enforcement," Crocs stated that "[p]rotection of our brand equity, intellectual property, and the goodwill that our brand has established is of paramount importance."  A copy of the March 4, 2021 letter is attached hereto as Exhibit 1 and incorporated by reference herein.

87.     In the March 4, 2021 letter (Ex. 1), Crocs sought to attempt to dissuade its retail partners from buying products from competitors like Joybees by asserting:

> As a retail partner of Crocs, it is our expectation that you will not
> invest in, advertise, nor make products available for sales that

> infringe our intellectual property and trade off the goodwill of the Crocs brands. Our Terms and Conditions of Sale expressly prohibit the infringement of Crocs's intellectual property rights including but not limited to trademark, patent, and design rights. Crocs holds extensive intellectual property in its designs, including the Classic Clog, and infringement of the same will not be tolerated.

88.  Joybees is a Colorado-based company that sells women's, men's, unisex, and children's molded footwear products, including flip-flops, sandals, and clogs.

89.  Both Joybees and Crocs make women's, men's, unisex, and children's molded footwear products, including clogs, and are direct competitors.

90.  Crocs has required retailers to either cease selling or decline to consider selling footwear products from competitors like Joybees as a condition of the retailers being allowed to sell, re-sell, or otherwise distribute Crocs's footwear products.

91.  Upon information and belief, Crocs leverages its patent rights to intimidate retailers and distributors into terminating their business relationship with competitors, including Joybees, in an effort to exclude Crocs's competitors from lawfully competing in the marketplace.

92.  As a direct and proximate result of Crocs's communications with retailers of Crocs's products, those retailers have refused to sell Joybees' products.

93.  As a direct and proximate result of Crocs's refusal to partner with retailers unless they agree not to sell competitor products, including Joybees' lawfully competing products, Joybees has lost a significant number of sales to potential consumers who instead purchased Crocs's products.

94.  Crocs has a documented history of aggressively enforcing patent rights by bringing infringement actions against competitors, including Joybees, for selling products that are, according to Crocs, similar to Crocs's products.

95.  Crocs has brought enforcement actions before the International Trade Commission

against competitor products that, according to Crocs, are "knock-offs" of Crocs's products.

96.      Crocs has proclaimed in public filings before the International Trade Commission, specifically its June 7, 2021 Initial ITC Complaint, para. 660, that Crocs engages in "aggressive ongoing enforcement measures" related to its intellectual property rights.

97.      Crocs has brought enforcement actions in Federal District Court against competitor products, including Joybees' products, that, according to Crocs, are "knock-offs" of Crocs's products.

98.      In 2006, Crocs accused competitors of knocking off and imitating its products and filed a lawsuit claiming infringement of the '858 Patent. Most of the competitors Crocs sued in 2006 either quickly went out of business or stopped selling molded clogs.

99.      Upon information and belief, Crocs's strategy of aggressive enforcement of its patents was designed to force competitors out of the molded footwear clog market.

100.      Upon information and belief, as a direct and proximate result of Crocs's enforcement efforts, retailers and distributors of molded footwear products reasonably apprehend that Crocs will assert patent infringement claims against them if they invest in, advertise, or make available for sale products that compete with Crocs's products, including Joybees' products.

101.      As a direct and proximate result of Crocs's enforcement efforts, competitors like Joybees reasonably apprehend that Crocs will assert patent infringement claims if products similar to Crocs's purportedly patented products are made, sold, or imported into the U.S.

102.      Crocs's enforcement efforts have prevented or limited the ability of competitors like Joybees to lawfully compete in the marketplace.  In turn, this has deprived consumers of the benefits of lawful competition, including increased choice, innovation, and price competition.

**Crocs's Product Packaging and IP Lookup Website Page**

103.    Crocs places its patent rights at the core of its strategy for product marketing and product packaging.

104.    Crocs's footwear products are sold with a hang tag that is attached or that can be attached to the footwear products or with a label applied to the product packaging that typically refers to Crocs's patent rights.

105.    A representation of the label applied to the product packaging for the "Classic" clog model of a Crocs footwear product is below:



106.    A representation of the hang tag attached to a Crocs footwear product is below:

 

107.    As can be seen in the foregoing examples, the hang tag and product packaging label for Crocs's footwear products typically includes language inferring that the product is "covered by patent, design, or IP rights" and directing the reader to visit www.crocs.com/ip (the "Crocs IP Lookup Page") to obtain more information.

108.    Upon information and belief, Crocs designs its hang tags to serve an advertisement purpose by attracting consumers to Crocs's products and the Crocs brand more generally.

109.    Crocs's hang tags typically include the "crocs" trademark—as indicated by the ™ symbol—as well as language with directions to visit the Crocs website to attract customers to the Crocs brand and to encourage readers to find out whether the specific Crocs product to which the hang tags is affixed is covered by Crocs's intellectual property rights.

110.    The appearance of Crocs's hang tags suggests Crocs uses its hang tags as a form of advertising. The size of the hang tags requires them to be displayed on the outside of the footwear product, ensuring the hang tags are readily visible to consumers when the products are displayed for sale in retail stores. The bright green coloration of the "crocs" trademark and the material of the hanger itself also suggests the purpose of the tag is to attract consumers to the product itself as

well as to the Crocs brand.

111.    Further evidence of the advertisement purpose of Crocs's hang tags can be seen

when Crocs licenses IP that belongs to a third party and includes that licensed IP in the design of

as part of Crocs's product. In such instances, Crocs includes additional hang tags that promote

Crocs's collaboration with these other brands. One such example in which Crocs's Disney Moana

clog is accompanied by a hang tag promoting the partnership between Crocs and Disney is pictured

below.



112.    Upon information and belief, Crocs's deliberately includes a separate branded hang

tag for its licensed products is for the primary purpose of serving as an advertisement and

promoting Crocs's collaboration with third-party brands.

113.    As further evidence of the advertisement purpose of Crocs's hang tags, Crocs does

not package its products in shoe boxes where the hang tags would be hidden inside the shoe box. Instead, upon information and belief, Crocs directs retailers to display Crocs's products on slatwall pegs in such a way that the hang tags are prominently displayed dangling from the products for better visibility to consumers considering which shoes to purchase. An example of the manner in which Crocs's products are displayed in brick-and-mortar retail stores is pictured below.



114.    In November of 2025, Crocs footwear products were purchased from a variety of brick-and-mortar retail stores in Colorado and California, including Crocs's retail stores, Shoe Palace, Foot Locker, DSW, Dicks Sporting Goods, JD Sports, Journeys, and Champs. Each model

of Crocs footwear products purchased from these stores included a hang tag with language inferring that the product is "covered by patent, design, or IP rights" and direction to visit the Crocs IP Lookup Page to obtain more information. Representative photographs of Crocs footwear products purchased from the aforementioned retail stores are attached hereto as Exhibit 2 and incorporated by reference herein.

115.    Upon information and belief, Crocs intends the information on the hang tag or product packaging label, together with the Crocs IP Lookup Page, to be read by purchasing consumers or potential consumers of Crocs's footwear products.

116.    Upon information and belief, Crocs intends the information on the hang tag or product packaging label, together with the Crocs IP Lookup Page, to be read by retailers and distributors, including potential retailers and distributors of competitor products like Joybees.

117.    Crocs maintains the Crocs IP Lookup Page as a part of its website, www.crocs.com. The Crocs IP Lookup Page is dedicated to providing all members of the public, including consumers, distributors, retailers, and competitors of Crocs's products, with notice as to whether a particular Crocs footwear product is patented—including the specific patent or patents owned by Crocs that protect such product—or protected by other design rights or IP rights owned by Crocs.

118.    Through the hang tag or product packaging label that Crocs includes with most of the footwear products it sells, together with the Crocs IP Lookup Page, Crocs warns consumers that Crocs enforces its intellectual property rights.

119.    Through the hang tag or product packaging label that Crocs includes with most of the footwear products it sells, Crocs directs consumers to the Crocs IP Lookup Page to identify whether Crocs's intellectual property rights protect that specific footwear product.

120.    On the Crocs IP Lookup Page, Crocs provides members of the public, including all

consumers and potential consumers, with instructions on how to identify the Product Code that applies to any particular Crocs footwear product.

121.    "Product Code" refers to a unique 5- or 6- digit code that Crocs assigns to each of its footwear product model/style ("Product Code").

122.    Crocs lists the Product Code for each Crocs footwear model on the corresponding product page found on Crocs's website, www.crocs.com (the "Crocs Website") under "product details."

123.    By way of illustrative example, the Product Code for Crocs's Classic Clog footwear model is 10001. A representation of the Product Code as it is listed on the Classic Clog product page of the Crocs Website is below[1]:



124.    On the Crocs IP Lookup page, Crocs directs a visitor to enter a Product Code into a search query box.  A representation of the search query box on the Crocs IP Lookup page is

---

[1] https://www.crocs.com/p/classic-clog/10001.html?cgid=women-footwear&cid=410 (last visited November 19, 2025).

below[2]:



125.    The Crocs IP Lookup Page also includes the following notice directly under the search button (the "IP Enforcement Warning"):

PLEASE NOTE: This site associates certain articles, for example certain patented articles, with the number of one or more corresponding intellectual property (IP) rights, for example patent numbers. This database may not be all inclusive. Furthermore, products may be covered by more IP rights than those listed, including without limitation pending IP rights, copyright, trademark, trade dress, and unregistered design rights; and may be protected in more countries than those listed. This page serves as notice under 35 U.S.C. § 287(a). Crocs and its affiliates reserve all rights.

Crocs owns a robust intellectual property portfolio covering its innovative footwear and accessories including, without limitation unregistered and registered copyright, trademark, trade dress, patent and design rights. DO NOT COPY our products. We aggressively prosecute counterfeiting, intellectual property infringement, and customs seizure actions worldwide.

126.    Upon entering the Product Code in the search query box on the Crocs IP Lookup Page, Crocs provides the specific product name that corresponds to the Product Code and a list of the specific patents and registered designs owned by Crocs that Crocs states may cover the product (the "IP Search Results").

---

[2] https://www.crocs.com/company/intellectual-property.html (last visited November 20, 2025).

127. By way of illustrative example, a representation of the IP Search Results for the Classic Clog is below:



128. In addition to the Product Code, most Crocs products include additional codes related to size, color, and/or a regional or channel code. This information, together with the Product Code, represents the product's stock keeping unit ("SKU").

129. By way of illustrative example, the SKU that is associated with a size 9 navy Classic Clog is 10001-410-M9, which is comprised of the Product Code (10001), color code (410), regional or channel code (M), and size code (9). The SKU for a size 8 black Classic Clog is 10001-001-M8, which is comprised of the Product Code (10001), color code (001), regional or channel code (M), and size code (8).

130. The IP Search Results for any Product Code applies to all product SKUs that

incorporate that Product Code.  Upon information and belief, each Product Code is incorporated into hundreds of SKUs that reflect various sizes and colors.

**Crocs Falsely Represents its Products are Protected by Valid, Unexpired Patents.**

131.    Beginning in at least October 2023, Crocs routinely and continuously represented for a period of more than two years that its footwear products were protected by patents that are expired or invalidated.

132.    Joybees sent notice to Crocs on December 1, 2025 objecting to, among other things, Crocs's false and misleading statements on the Crocs IP Lookup Page (the "Joybees Notification").

133.    At the time Joybees sent the Joybees Notification to Crocs on December 1, 2025, the search query box on the Crocs IP Lookup Page was still live and returning the search results as described herein.

134.    By December 3, 2025, Crocs removed the search query box feature from the Crocs IP Lookup Page. Upon information and belief, Crocs removed the search query box feature from the Crocs IP Lookup Page in direct response to the Joybees Notification.  As a result, members of the public can no longer search by Crocs's Product Codes to find the IP Search Results for a specific product.  Crocs did not include any language on the Crocs IP Lookup Page correcting its prior false and misleading representations regarding its intellectual property rights or providing notification that any of its intellectual rights had expired or were not enforceable.

135.    Upon information and belief, if Joybees had not sent the Joybees Notification and objected to Crocs's false representations regarding its intellectual property rights, Crocs would still be making false representations today.

136.    Prior to the Joybees Notification, in the IP Search Results for numerous Product Codes—and by extension each and every SKU that incorporates the Product Code—Crocs

identified specific patents and design registrations owned by Crocs that were expired or invalidated. Crocs's representation that the products associated with the Product Code "may be covered" by the expired patents and design registrations was literally false and objectively misleading because expired and invalidated patents and design registrations are not enforceable.

137. The IP Enforcement Warning was literally false and objectively misleading when presented in conjunction with expired or invalidated patents and design registrations because expired and invalidated patents and design registrations are not enforceable.

138. Crocs's false representations that its footwear products were protected by expired and invalidated patents and design registrations extended across multiple product styles, including but not limited to the Classic Clog, Classic Glitter Clog, Classic Marbled Clog, Classic Realtree, Crocband Clog, Baya Clog, Baya Glitter Clog, Baya Marbled Clog, Baya Lined Clog, Bayaband Clog, Bistro Clog, Bistro Graphic Clog, Bistro Pro LiteRide Clog, Off Court Clog, Specialist II Clog, Classic Platform Clog (collectively, the "Falsely Marked Products").

139. Upon information and belief, Crocs, as the owner of the rights, knew the expiration dates and validity-status of the patent rights it publicly claimed covered the Falsely Marked Products in the U.S.

140. Upon information and belief, Crocs did not have any reasonable basis to believe any of its Falsely Marked Products were protected by patents or design registrations after their date of expiration.

141. Upon information and belief, Crocs knowingly misrepresented that its Falsely Marked Products were protected by patent rights despite the fact that the patents identified on the Crocs IP Lookup Page for such products were expired or invalidated and no enforceable patent rights exist for such products.

## Crocs Classic Clog

142.    Crocs prominently suggests on its product packaging label and product hang tag that its Classic Clog product is protected by patent rights.

143.    Crocs's representations that the Classic Clog may be covered by U.S. patent rights is literally false and objectively misleading because no enforceable U.S. patent rights cover the Classic Clog model of footwear products.

144.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Classic Clog Product Code (10001) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 10001 is attached hereto as Exhibit 3 and incorporated by reference herein.

145.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 10001 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Classic | 10001 | U.S. Patent No. 6,993,858 | Expired |
| | | European Community Design Reg. No. 000257001-0001 | Invalidated |
| | | Korea Design Reg. No. 30-0396526 | Expired |

146.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 10001 was the '858 Patent, which is expired.

147.    Crocs represented through the IP Search Results for Product Code 10001 that every product SKU that includes Product Code 10001 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

148.    Crocs's representations in the IP Search Results for Product Code 10001 that every

product SKU that included Product Code 10001 was protected by the '858 Patent was literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

149.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

150.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

151.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 10001 that the Classic Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Classic Clog footwear product.

152.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 10001 that the Classic Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Classic Clog footwear product.

**Crocs's Classic Glitter Clog**

153.    Crocs prominently suggests on its product packaging label and product hang tag that its Classic Glitter Clog product is protected by patent rights.

154.    Crocs's representations that the Classic Glitter Clog may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Classic Glitter Clog model of footwear products.

155.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that bore the Classic Glitter Clog Product Code (205942) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of

December 1, 2025 for Product Code 205942 is attached hereto as Exhibit 4 and incorporated by reference herein.

156.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 205942 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Classic Glitter | 205942 | U.S. Patent No. 6,993,858 | Expired |

157.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 205942 was the '858 Patent, which is expired.

158.    Crocs represented through the IP Search Results for Product Code 205942 that every product SKU that included Product Code 205942 was protected by the '858 Patent despite the fact that the '858 Patent was expired.

159.    Crocs's representations in the IP Search Results for Product Code 205942 that every product SKU that included Product Code 205942 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

160.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

161.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

162.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 205942 that the Classic Glitter Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Classic Glitter Clog footwear product.

163.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 205942 that the Classic Glitter Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Classic Glitter Clog footwear product.

## Crocs's Classic Marbled Clog

164.    Crocs prominently suggests on its product packaging and product hang tag that its Classic Marbled Clog product is protected by patent rights.

165.    Crocs's representations on its product packaging that the Classic Marbled Clog may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Classic Marbled Clog model of footwear products.

166.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page, that every Product SKU that includes the Classic Marbled Clog Product Code (206867) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 206867 is attached hereto as Exhibit 5 and incorporated by reference herein.

167.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 206867 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---------|--------------|-------------------------|--------|
| Classic Marbled | 206867 | U.S. Patent No. 6,993,858 | Expired |
| | | Korea Design Reg. No. 0396526 | Expired |

168.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 206867 was the '858 Patent, which is expired.

169.    Crocs represented through the IP Search Results for Product Code 206867 that

every product SKU that includes Product Code 206867 is protected by the '858 Patent despite the fact that the '858 Patent is expired.

170.    Crocs's representations in the IP Search Results for Product Code 206867 that every product SKU that included Product Code 206867 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

171.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

172.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

173.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 206867 that the Classic Marbled Clog footwear product was protected by patents in the U.S., despite the fact that no enforceable U.S. patent rights cover the Classic Marbled Clog footwear product.

174.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 206867 that the Classic Marbled Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Classic Marbled Clog footwear product.

### Crocs's Classic Realtree

175.    Crocs prominently suggests on its product packaging and product hang tag that its Classic Realtree footwear product is protected by patent rights.

176.    Crocs's representations that the Classic Realtree footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S.

patent rights cover the Classic Realtree model of footwear products.

177.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Classic Realtree Product Code (12132) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 12132 is attached hereto as Exhibit 6 and incorporated by reference herein.

178.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 12132 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---------|--------------|-------------------------|--------|
| Classic Realtree | 12132 | U.S. Patent No. 6,993,858 | Expired |
| | | Korea Design Reg. No. 30-0396526 | Expired |

179.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 12132 was the '858 Patent, which is expired.

180.    Crocs represented through the IP Search Results for Product Code 12132 that every product SKU that includes Product Code 12132 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

181.    Crocs's representations in the IP Search Results for Product Code 12132 that every product SKU that includes Product Code 12132 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

182.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

183.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

184.     Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 12132 that the Classic Realtree footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Classic Realtree model of footwear products.

185.     Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 12132, that the Classic Realtree footwear product was protected by patents in the U.S., despite the fact that no enforceable U.S. patent rights cover the Classic Realtree model of footwear products.

### Crocs's Crocband Clog

186.     Crocs prominently suggests on its product packaging and product hang tag that its Crocband Clog footwear product is protected by patent rights.

187.     Crocs's representations that the Crocband Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Crocband Clog model of footwear products.

188.     Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Crocband Clog Product Code (11016) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 11016 is attached hereto as Exhibit 7 and incorporated by reference herein.

189.     A summary of the non-enforceable patents Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 11016 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---------|-------------|------------------------|--------|
| Crocband | 11016 | U.S. Patent No. 6,993,858 | Expired |
| | | U.S. Patent No. D610,784 | Expired |

190.    The only U.S. Patents that Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 11016 were the '858 Patent and the '784 Patent, both of which are expired.

191.    Crocs has represented through the IP Search Results for Product Code 11016 that every product SKU that includes Product Code 11016 is protected by the '858 Patent despite the fact that the '858 Patent is expired.

192.    Crocs's representations in the IP Search Results for Product Code 11016 that every product SKU that includes Product Code 11016 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

193.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

194.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

195.    Crocs has represented through the IP Search Results for Product Code 11016 that every product SKU that includes Product Code 11016 is protected by the '784 Patent despite the fact that the '784 Patent is expired.

196.    Crocs's representations in the IP Search Results for Product Code 11016 that every product SKU that includes Product Code 11016 was protected by the '784 Patent were literally false and objectively misleading because the '784 Patent is expired and no longer enforceable.

197.    As the patent owner, Crocs had access to all information necessary to determine the term of the '784 Patent and that it expired on March 2, 2024.

198.    Upon information and belief, Crocs has known the '784 Patent expired on or before March 2, 2024 since at least as early as March 2, 2024.

199.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 11016 that the Crocband Clog footwear products was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Crocband Clog model of footwear products.

200.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 11016 that the Crocband Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Crocband Clog model of footwear products.

**Crocs's Baya Clog**

201.    Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Baya Clog footwear product is protected by patent rights.

202.    Crocs's representations that the Baya Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Baya Clog model of footwear products.

203.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Baya Clog Product Code (10126) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 10126 is attached hereto as Exhibit 8 and incorporated by reference herein.

204.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 10126 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Baya | 10126 | U.S. Patent No. 6,993,858 | Expired |
| | | Argentina Design Reg. 76856 | Expired |
| | | India Design Reg. No. 214378 | Expired |
| | | Jordan Design Reg. 1602 | Expired |
| | | Korea Design Reg. No. 30-0506471 | Expired |
| | | Philippines Design Reg. No. 3-2008-000085 | Expired |
| | | Singapore Design Reg. No. D2008/79/F | Expired |

205.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 10126 was the '858 Patent, which is expired.

206.    Crocs has represented through the IP Search Results for Product Code 10126 that every product SKU that includes Product Code 10126 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

207.    Crocs's representations in the IP Search Results for Product Code 10126 that every product SKU that includes Product Code 10126 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

208.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

209.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

210.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 10126, that the Baya Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Baya Clog model of footwear products.

211.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 10126, that the Baya Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Baya Clog

model of footwear products.

<b><u>Crocs's Baya Glitter Clog</u></b>

212.    Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Baya Glitter Clog footwear product is protected by patent rights.

213.    Crocs's representations that the Baya Glitter Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Baya Glitter Clog model of footwear products.

214.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Baya Glitter Clog Product Code (205925) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 205925 is attached hereto as Exhibit 9 and incorporated by reference herein.

215.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 205925 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Baya Glitter | 205925 | U.S. Patent No. 6,993,858 | Expired |
| | | India Design Reg. No. 214378 | Expired |
| | | Jordan Design Reg. 1602 | Expired |
| | | Philippines Design Reg. No. 3-2008-000085 | Expired |
| | | Singapore Design Reg. No. D2008/79/F | Expired |

216.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 205925 was the '858 Patent, which is expired.

217.    Crocs has represented through the IP Search Results for Product Code 205925 that every product SKU that includes Product Code 205925 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

218.     Crocs's representations in the IP Search Results for Product Code 205925 that every product SKU that includes Product Code 205925 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

219.     As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3,2023.

220.     Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

221.     Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 205925 that the Baya Glitter Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Baya Glitter Clog model of footwear products.

222.     Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 205925 that the Baya Glitter Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Baya Glitter Clog model of footwear products.

**Crocs's Baya Marbled Clog**

223.     Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Baya Marbled Clog footwear product is protected by patent rights.

224.     Crocs's representations on its product packaging that the Baya Marbled Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Baya Marbled Clog model of footwear products.

225. Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes Product Code (206935) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 206935 is attached hereto as Exhibit 10 and incorporated by reference herein.

226. A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 206935 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Baya Marbled | 206935 | U.S. Patent No. 6,993,858 | Expired |
| | | Jordan Design Reg. 1602 | Expired |
| | | Philippines Design Reg. No. 3-2008-000085 | Expired |
| | | Singapore Design Reg. No. D2008/79/F | Expired |

227. The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 206935 was the '858 Patent, which is expired.

228. Crocs has represented through the IP Search Results for Product Code 206935 that every product SKU that includes Product Code 206935 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

229. Crocs's representations in the IP Search Results for Product Code 206935 that every product SKU that includes Product Code 206935 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

230. As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

231. Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

232.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 206935 that the Baya Marbled Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Baya Marbled Clog model of footwear products.

233.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 206935 that the Baya Marbled Clog footwear product is protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Baya Marbled Clog model of footwear products.

**Crocs's Baya Lined Clog**

234.    Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Baya Lined Clog footwear product is protected by patent rights.

235.    Crocs's representations that the Baya Lined Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Baya Lined Clog model of footwear products.

236.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Baya Lined Clog Product Code (205969) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 205969 is attached hereto as Exhibit 11 and incorporated by reference herein.

237.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 205969 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---------|--------------|------------------------|--------|
| Baya Lined | 205969 | U.S. Patent No. 6,993,858 | Expired |
| | | India Design Reg. No. 214378 | Expired |
| | | Korea Design Reg. No. 30-0506471 | Expired |
| | | Philippines Design Reg. No. 3-2008-000085 | Expired |
| | | Singapore Design Reg. No. D2008/79/F | Expired |

238.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 205969 was the '858 Patent, which is expired.

239.    Crocs has represented through the IP Search Results for Product Code 205969 that every product SKU that includes Product Code 205969 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

240.    Crocs's representations in the IP Search Results for Product Code 205969 that every product SKU that includes Product Code 205969 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

241.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

242.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

243.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 205969 that the Baya Lined Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Baya Lined Clog model of footwear products.

244.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 205969 that the Baya Lined Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the

Baya Lined Clog model of footwear products.

## Crocs's Bayaband Clog

245.    Crocs prominently suggests on its product packaging and product hang tag that its Bayaband Clog footwear product is protected by patent rights.

246.    Crocs's representations that the Bayaband Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Bayaband Clog model of footwear products.

247.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Bayaband Clog Product Code (205089) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 205089 is attached hereto as Exhibit 12 and incorporated by reference herein.

248.    The expired patent Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 205089 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---------|--------------|-------------------------|--------|
| Bayaband | 205089 | U.S. Patent No. 6,993,858 | Expired |

249.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 205089 was the '858 Patent, which is expired.

250.    Crocs has represented through the IP Search Results for Product Code 205089 that every product SKU that includes Product Code 205089 was protected by the '858 Patent, despite the fact that the '858 Patent is expired.

251.    Crocs's representations in the IP Search Results for Product Code 205089 that every product SKU that includes Product Code 205089 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer

enforceable.

252.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

253.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

254.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 205089 that the Bayaband Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Bayaband Clog model of footwear products.

255.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 205089 that the Bayaband Clog footwear product was protected by patents in the U.S., despite the fact that no enforceable U.S. patent rights cover the Bayaband Clog model of footwear products.

## Crocs's Bistro Clog

256.    Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Bistro Clog footwear product is protected by patent rights.

257.    Crocs's representations that the Bistro Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Bistro Clog model of footwear products.

258.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Bistro Clog Product Code (10075) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 10075 is attached hereto as Exhibit 13 and incorporated by reference herein.

259.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 10075 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Bistro | 10075 | U.S. Patent No. 6,993,858 | Expired |
| | | U.S. Patent No. D599,538 | Expired |
| | | Australia Design Reg. No. 316498 | Expired |
| | | Australia Design Reg. No. 316499 | Expired |
| | | Canada Design Reg. No. 121695 | Expired |
| | | Israel Design Reg. No. 44574 | Expired |
| | | Jordan Design Reg. 1592 | Expired |
| | | Philippines Design Reg. No. 3-2007-000450 | Expired |
| | | Singapore Design Reg. No. D2007/827/B | Expired |

260.    The only U.S. Patents that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 10075 were the '858 Patent and the '538 Patent, both of which are expired.

261.    Crocs has represented through the IP Search Results for Product Code 10075 that every product SKU that includes Product Code 10075 was protected by the '858 Patent, despite the fact that the '858 Patent is expired.

262.    Crocs's representations in the IP Search Results for Product Code 10075 that every product SKU that includes Product Code 10075 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

263.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

264.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

265.    Crocs has represented through the IP Search Results for Product Code 10075 that every product SKU that includes Product Code 10075 was protected by the '538 Patent, despite

the fact that the '538 Patent is expired.

266.    Crocs's representations in the IP Search Results for Product Code 10075 that every product SKU that includes Product Code 10075 was protected by the '538 Patent were literally false and objectively misleading because the '538 Patent is expired and no longer enforceable.

267.    As the patent owner, Crocs had access to all information necessary to determine the term of the '538 Patent and that it expired on September 8, 2023.

268.    Upon information and belief, Crocs has known the '538 Patent expired on or before September 8, 2023 since at least as early as September 8, 2023.

269.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 10075 that the Bistro Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Bistro Clog model of footwear products.

270.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 10075 that the Bistro Clog footwear product were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Bistro Clog model of footwear products.

**Crocs's Bistro Graphic Clog**

271.    Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Bistro Graphic Clog footwear product is protected by patent rights.

272.    Crocs's representations that the Bistro Graphic Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Bistro Graphic Clog model of footwear products.

273.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page

that every product SKU that includes Bistro Graphic Clog Product Code (204044) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 204044 is attached hereto as Exhibit 14 and incorporated by reference herein.

274.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 204044 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Bistro Graphic Clog | 204044 | U.S. Patent No. 6,993,858 | Expired |
| | | U.S. Patent No. D599,538 | Expired |
| | | Argentina Design Reg. 76856 | Expired |
| | | Australia Design Reg. No. 316498 | Expired |
| | | Australia Design Reg. No. 316499 | Expired |
| | | Canada Design Reg. No. 121695 | Expired |
| | | Israel Design Reg. No. 44574 | Expired |
| | | Jordan Design Reg. 1592 | Expired |
| | | Philippines Design Reg. No. 3-2007-000450 | Expired |
| | | Singapore Design Reg. No. D2007/827/B | Expired |

275.    The only U.S. Patents that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 204044 were the '858 Patent and the '538 Patent, both of which are expired.

276.    Crocs has represented through the IP Search Results for Product Code 204044 that every product SKU that includes Product Code 204044 was protected by the '858 Patent, despite the fact that the '858 Patent is expired.

277.    Crocs's representations in the IP Search Results for Product Code 204044 that every product SKU that includes Product Code 204044 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

278.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

279.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

280.    Crocs has represented through the IP Search Results for Product Code 2024044 that every product SKU that includes Product Code 204044 was protected by the '538 Patent, despite the fact that the '538 Patent is expired.

281.    Crocs's representations in the IP Search Results for Product Code 204044 that every product SKU that includes Product Code 204044 was protected by the '538 Patent were literally false and objectively misleading because the '538 Patent is expired and no longer enforceable.

282.    As the patent owner, Crocs had access to all information necessary to determine the term of the '538 Patent and that it expired on September 8, 2023.

283.    Upon information and belief, Crocs has known the '538 Patent expired on or before September 8, 2023 since at least as early as September 8, 2023.

284.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 204044 that the Bistro Graphic Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Bistro Graphic Clog model of footwear products.

285.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 204044 that the Bistro Graphic Clog footwear product \was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Bistro Graphic Clog model of footwear products.

**Crocs's Bistro Pro LiteRide Clog**

286.    Crocs prominently suggests on its product packaging and product hang tag that its
Bistro Pro LiteRide Clog footwear product is protected by patent rights.

287.    Crocs's representations that the Bistro Pro LiteRide Clog footwear product may be
covered by U.S. patent rights are literally false and objectively misleading because no enforceable
U.S. patent rights cover the Bistro Pro LiteRide Clog model of footwear products.

288.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page
that every product SKU that includes the Bistro Pro LiteRide Clog Product Code (205669) is
protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results
as of December 1, 2025 for Product Code 205669 is attached hereto as Exhibit 15 and incorporated
by reference herein.

289.    The expired patent Crocs included in the IP Search Results on the Crocs IP Lookup
Page for Product Code 205669 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---------|-------------|------------------------|--------|
| Bistro Pro LiteRide Clog | 205669 | U.S. Patent No. 6,993,858 | Expired |

290.    The only U.S. Patent that Crocs included in the IP Search Results on the Crocs IP
Lookup Page for Product Code 205669 was the '858 Patent, which is expired.

291.    Crocs has represented through the IP Search Results for Product Code 205669 that
every product SKU that includes Product Code 205669 was protected by the '858 Patent despite
the fact that the '858 Patent is expired.

292.    Crocs's representations in the IP Search Results for Product Code 205669 that
every product SKU that includes Product Code 205669 was protected by the '858 Patent were
literally false and objectively misleading because the '858 Patent is expired and no longer

enforceable.

293.    As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

294.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

295.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 205669 that the Bistro Pro LiteRide Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Bistro Pro LiteRide Clog model of footwear products.

296.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 205669 that the Bistro Pro LiteRide Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Bistro Pro LiteRide Clog model of footwear products.

## Crocs's Off Court Clog

297.    Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Off Court Clog footwear product is protected by patent rights.

298.    Crocs's representations that the Off Court Clog footwear product may be covered by patent rights are literally false and objectively misleading because no enforceable patent rights cover the Off Court Clog model of footwear products.

299.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page that every product SKU that includes the Off Court Clog Product Code (208371) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 208371 is attached hereto as Exhibit 16 and incorporated by

reference herein.

300. A summary of the non-enforceable patents Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 208371 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Off Court Clog | 208371 | U.S. Patent No. 6,993,858 | Expired |
| | | U.S. Patent No. D610,784 | Expired |

301. The only U.S. Patents that Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 208371 were the '858 Patent and the '784 Patent, both of which are expired.

302. Crocs has represented through the IP Search Results for Product Code 208371 that every product SKU that includes Product Code 208371 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

303. Crocs's representations in the IP Search Results for Product Code 208371 that every product SKU that includes Product Code 208371 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

304. As the patent owner, Crocs had access to all information necessary to determine the term of the '858 Patent and that it expired on October 3, 2023.

305. Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

306. Crocs has represented through the IP Search Results for Product Code 208371 that every product SKU that includes Product Code 208371 was protected by the '784 Patent despite the fact that the '784 Patent is expired.

307.    Crocs's representations in the IP Search Results for Product Code 208371 that every product SKU that includes Product Code 208371 was protected by the '784 Patent were literally false and objectively misleading because the '784 Patent is expired and no longer enforceable.

308.    As the patent owner, Crocs had access to all information necessary to determine the term of the '784 Patent and that it expired on March 2, 2024.

309.    Upon information and belief, Crocs has known the '784 Patent expired on or before March 2, 2024 since at least as early as March 2, 2024.

310.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 208371 that the Off Court Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Off Court Clog model of footwear products.

311.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 208371 that the Off Court Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Off Court Clog model of footwear products.

**Crocs's Specialist II Clog**

312.    Upon information and belief, Crocs prominently suggests on its product packaging and product hang tag that its Specialist II Clog footwear product is protected by patent rights.

313.    Crocs's representations that the Specialist II Clog footwear product may be covered by U.S. patent rights are literally false and objectively misleading because no enforceable U.S. patent rights cover the Specialist II Clog model of footwear products.

314.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page

that every product SKU the includes the Specialist II Clog Product Code (204590) is protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results as of December 1, 2025 for Product Code 204590 is attached hereto as Exhibit 17 and incorporated by reference herein.

315.    A summary of the non-enforceable patents and design registrations Crocs included in the IP Search Results on the Crocs IP Lookup Page for Product Code 204590 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---|---|---|---|
| Specialist II Clog | 204590 | U.S. Patent No. 6,993,858 | Expired |
| | | U.S. Patent No. D599,538 | Expired |
| | | Australia Design Reg. No. 316498 | Expired |
| | | Australia Design Reg. No. 316499 | Expired |
| | | Canada Design Reg. No. 121695 | Expired |
| | | Israel Design Reg. No. 44574 | Expired |
| | | Philippines Design Reg. No. 3-2007-000450 | Expired |
| | | Singapore Design Reg. No. D2007/827/B | Expired |

316.    The only U.S. Patents that Crocs included in the IP Search Results on the Crocs IP Lookup Page for the Product Code 204590 were the '858 Patent and the '538 Patent, both of which are expired.

317.    Crocs has represented through the IP Search Results for Product Code 204590 that every product SKU that includes Product Code 204590 was protected by the '858 Patent despite the fact that the '858 Patent is expired.

318.    Crocs's representations in the IP Search Results for Product Code 204590 that every product SKU that includes Product Code 204590 was protected by the '858 Patent were literally false and objectively misleading because the '858 Patent is expired and no longer enforceable.

319.    As the patent owner, Crocs had access to all information necessary to determine the

term of the '858 Patent and that it expired on October 3, 2023.

320.     Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

321.     Crocs has represented through the IP Search Results for Product Code 204590 that every product SKU that includes Product Code 204590 was protected by the '538 Patent despite the fact that the '538 Patent is expired.

322.     Crocs's representations in the IP Search Results for Product Code 204590 that every product SKU that includes Product Code 204590 was protected by the '538 Patent were literally false and objectively misleading because the '538 Patent is expired and no longer enforceable.

323.     As the patent owner, Crocs had access to all information necessary to determine the term of the '538 Patent and that it expired on September 8, 2023.

324.     Upon information and belief, Crocs has known the '538 Patent expired on or before September 8, 2023 since at least as early as September 8, 2023.

325.     Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 204590 that the Specialist II Clog footwear products were protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Specialist II Clog model of footwear products.

326.     Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 204590 that the Specialist II Clog footwear product was protected by patents in the U.S. despite the fact that no enforceable U.S. patent rights cover the Specialist II Clog model of footwear products.

**Crocs's Classic Platform Clog**

327.    Crocs prominently suggests on its product packaging and product hang tag that its

Classic Platform Clog footwear product is protected by patent rights.

328.    Crocs's representations that the Classic Platform Clog footwear product may be

covered by U.S. patent rights are literally false and objectively misleading because no enforceable

U.S. patent rights cover the Classic Platform Clog model of footwear products.

329.    Prior to the Joybees Notification, Crocs represented on the Crocs IP Lookup Page

that every product SKU that includes the Classic Platform Clog Product Code (206750) is

protected by patents that are, in fact, expired. A screen capture of the Crocs IP Lookup Page results

as of December 1, 2025 for Product Code 206750 is attached hereto as Exhibit 18 and incorporated

by reference herein.

330.    The expired patent Crocs included in the IP Search Results on the Crocs IP Lookup

Page for Product Code 206750 prior to taking down the search query box is below:

| Product | Product Code | Country & Patent Number | Status |
|---------|--------------|-------------------------|--------|
| Classic Platform Clog | 206750 | U.S. Patent No. 6,993,858 | Expired |

331.    Crocs has represented through the IP Search Results for Product Code 206750 that

every product SKU that includes Product Code 206750 was protected by the '858 Patent, despite

the fact that the '858 Patent is expired.

332.    Crocs's representations in the IP Search Results for Product Code 206750 that

every product SKU that includes Product Code 206750 was protected by the '858 Patent were

literally false and objectively misleading because the '858 Patent is expired and no longer

enforceable.

333.    As the patent owner, Crocs had access to all information necessary to determine the

term of the '858 Patent and that it expired on October 3, 2023.

334.    Upon information and belief, Crocs has known the '858 Patent expired on or before October 3, 2023 since at least as early as October 3, 2023.

335.    Upon information and belief, Crocs knowingly misrepresented through the IP Search Results for Product Code 206750 that the Classic Platform Clog footwear product may be protected by the '858 Patent despite the fact that the '858 Patent is expired and is no longer enforceable.

336.    Upon information and belief, Crocs acted in bad faith in representing through the IP Search Results for Product Code 206750 that the Classic Platform Clog footwear product may be protected by the '858 Patent because Crocs knew the '858 Patent was expired and is no longer enforceable.

**Crocs's Marketing and Advertising Claims**

337.    Crocs emphasizes its website and e-commerce presence, including the Crocs IP Lookup Page, on the materials it distributes with its products, which include the product hang tag that is attached or that can be attached to the product.  These materials typically accompany every Crocs product regardless of where the product is purchased.

338.    Crocs relies on its website and e-commerce presence, including the Crocs IP Lookup Page and digital marketing and advertising activities, to facilitate a greater connection with consumers and to provide Crocs with an opportunity to educate consumers about Crocs's products.

339.    According to its 2024 10-K Report, Crocs leverages "digital marketing activities to enhance the consumer experience and drive sales, thereby benefiting from the continued migration of consumers to online shopping."

340.    Crocs identifies in its advertising materials, including in its digital marketing activities, a number of traits that Crocs claims make its products innovative.

341.    In a digital marketing promotional email advertisement dated June 17, 2025, Crocs invited comparison of the appearance and performance of its Classic Clog product to a Joybees Active Clog. Crocs refers to the Joybees Active Clog product as a "dupe" and "imitation" of Crocs's products. In the same digital marketing promotional email advertisement, Crocs referred to its own Classic Clog product as "iconic" and highlighted the "water-friendly, quick-drying, and ultra-durable" features of its product.

342.    A representation of the digital marketing promotional email advertisement dated June 17, 2025 is below:



343.    An image of a Joybees' Active Clog is below:



344.    The Active Clog is Joybees' top selling and most identifiable product.

345.    At the time of the digital marketing promotional email advertisement dated June 17, 2025, Crocs was aware that the Active Clog is Joybees' top selling product.

346.    Upon information and belief, Crocs distributed the digital marketing promotional email advertisement dated June 17, 2025 to an extensive list of contacts, including consumers, retailers, distributors, and competitors like Joybees, listed on Crocs's promotional email distribution list. Upon information and belief, at the time of the digital marketing promotional email dated June 17, 2025, Croc's promotional email distribution list included millions of contacts.

347.    Upon information and belief, Crocs intentionally displayed Joybees' top selling product in effort to mislead consumers into believing that Joybees' Active Clog was an inferior "dupe" of Crocs's Classic Clog.

348.    Upon information and belief, Crocs intentionally displayed Joybees' top selling product in effort to mislead consumers into believing that Joybees' Active Clog is an unlawful imitation of Crocs's Classic Clog.

349.    Upon information and belief, Crocs intentionally doctored the image of Joybees' Active Clog to appear used, dirty, and worn out, unlike the new appearance of the Crocs Classic Clog, in effort to mislead consumers into believing that the performance of Joybees' Active Clog is inferior to Crocs's Classic Clog.

350.    The comfort, water-resistance, dry time, and durability of foam-injected footwear products was not unique or exclusive to Crocs as of June 17, 2025.

351.    Joybees' foam-injected footwear products are comfortable, water-friendly, quick-drying, and ultra-durable.

352.    At the time of the digital marketing promotion email dated June 17, 2025, Crocs's patents that protected its method of manufacturing foam-injected footwear were expired and were not a feature that was exclusive to Crocs's products.

353.    At the time of the digital marketing promotional email advertisement dated June

17, 2025, Crocs's patents that protected the design of the Crocs Classic Clog were expired.

354.    At the time of the digital marketing promotional email advertisement dated June 17, 2025, Crocs's patents that protected foam-injected footwear including a "pivoting heel strap" were expired and were not a feature that was exclusive to Crocs's products.

355.    At the time of the digital marketing promotional email advertisement dated June 17, 2025, Crocs was falsely representing on the Crocs IP Lookup Page that U.S. patents still protected the Falsely Marked Products, including the Crocs Classic Clog that appears in the marketing promotional email, despite the fact that the U.S. patents listed on the Crocs IP Lookup Page for such products were expired.

356.    Upon information and belief, Crocs leverages its e-commerce presence and digital marketing and advertising activities, together with its representations that the Falsely Marked Products are patented, to mislead consumers into believing that Joybees' products are inferior, including that they are constructed of inferior material, and that Crocs is the exclusive source of superior "ultra-durable" footwear.

357.    Upon information and belief, Crocs leverages its e-commerce presence and digital marketing and advertising activities, together with its representations that the Falsely Marked Products are patented, to mislead consumers into believing that Crocs is the exclusive source of authentic foam-injected footwear.

358.    Upon information and belief, Crocs leverages its e-commerce presence and digital marketing and advertising activities, together with its representations that the Falsely Marked Products are patented, to influence consumers' purchasing decisions and to encourage consumers to purchase Crocs's products over competitor products.

359.    Joybees experienced a significant revenue decline following Crocs's mass

distribution of the digital marketing promotional email advertisement dated June 17, 2025. Specifically, for the period June 17, 2025 – December 1, 2025 (the period following Crocs's June 17, 2025 email marketing campaign), Joybees experienced a 60% decrease in sales of its Active Clog as compared to the same period in 2024 (June 17, 2024 – December 1, 2024).

## Market Chilling Effect

360.    By advertising that the Falsely Marked Products are patented, Crocs invokes expired patent rights to create a false impression of exclusivity and superiority for such products.

361.    By advertising that the Falsely Marked footwear products are patented, Crocs invokes expired patent rights to discourage potential competitors from manufacturing products similar to the Falsely Marked Products.

362.    By advertising that the Falsely Marked Products are patented, Crocs invokes expired patent rights to discourage potential competitors from selling products similar to the Falsely Marked Products.

363.    By advertising the Falsely Marked Products are protected by patents that are, in fact, expired, Crocs invokes expired patent rights to mislead distributors into believing they risk infringement liability by manufacturing lawfully competing products.

364.    By advertising the Falsely Marked Products are protected by patents that are, in fact, expired, Crocs invokes expired patent rights to mislead retailers into believing they risked infringement liability by selling lawfully competing products.

365.    Crocs's conduct in advertising the Falsely Marked Products are patented despite the fact that the patents are expired or are otherwise no longer enforceable has had a material tendency to chill legitimate market competition.

366.    Upon information and belief, retailers and distributors, having received prior patent

enforcement letters from Crocs, reasonably interpreted Crocs's continued representations that the Falsely Marked Products are patented as confirmation that Crocs retained enforceable patent rights.

367.     Upon information and belief, retailers and distributors refrained from purchasing or stocking lawfully competing footwear products, including Joybees' products, out of concern for potential infringement liability or costly legal disputes.

368.     Upon information and belief, retailers have continued to decline to carry lawfully competing footwear products, including Joybees' products, for fear of stocking "dupes" that infringe Crocs's patent rights.

**Unfair Advantage in the Market Gained by Promoting Products as Patented**

369.     The Falsely Marked Products are not the only time Crocs has falsely represented that its footwear products or materials are protected by patents.

370.     Crocs has falsely represented on its website that its Croslite material is patented despite the fact that Croslite is not patented.

371.     Competitors have asserted legal claims against Crocs based on Crocs's false representations that Croslite is patented.

372.     Despite receiving at least one adverse judicial decision based on its false representation that Croslite is patented, Crocs has not changed its pattern of making false patent designations.

373.     Crocs's false patent designation, including on the Crocs IP Lookup Page, conveys to retailers and distributors that Crocs's product is legally protected against copying or imitation.

374.     By falsely representing its products are patented, including on the Crocs IP Lookup Page, Crocs has artificially created and maintained a market barrier against legitimate competition

beyond the statutory term for a lawful monopoly.

375.    Crocs's false representations that the Falsely Marked Products are patented, including on the Crocs IP Lookup Page, enables Crocs to capitalize on the appearance of continuing innovation and exclusivity without corresponding investment or entitlement.

376.    Crocs's conduct has deprived competitors, including Joybees, of access to retail channels and consumers, which has enabled Crocs to maintain its market position through deception rather than innovation.

377.    By trading on the expired patents, including on the Crocs IP Lookup Page, Crocs has commanded premium pricing and a disproportionate market share, secured favorable placement and promotional opportunities with retailers, and deceived consumers into associating the Falsely Marked Products with proprietary technology and innovation that no longer enjoys patent protection in the U.S.

378.    Crocs's false representations that the Falsely Marked Products are protected by U.S. patent rights have reinforced its standing with retailers and distributors by implying ongoing legal protection and enforcement authority in the U.S.

379.    Crocs exploited the perception that the Falsely Marked Products remained protected by U.S. patent rights to maintain and expand shelf space, obtain exclusivity agreements with retailers, and discourage retailers from carrying competing or lower-cost alternatives offered by Joybees and other competitors in the U.S.

380.    Crocs's conduct unfairly secures Crocs a commercial advantage in the U.S. through deception and misuse of patent markings, rather than through superior quality or innovation.

381.    Crocs has been unjustly enriched through the ability to use "patented" as a marketing differentiator for the Falsely Marked Products long after patent protection in the U.S.

has lapsed.

382.     Crocs's unjust enrichment is the direct result of misleading the U.S. market and exploiting a regulatory framework designed to encourage—not obstruct—fair competition.

## Competitive Harm

383.     Upon information and belief, legitimate competitors, including Joybees, were deterred by Crocs's false statements regarding its intellectual property rights, including its U.S. Patent rights from developing, manufacturing, or selling products similar to the Falsely Marked Products that would otherwise be lawful to produce, resulting in an unjust extension of Crocs's monopoly power beyond the statutory term granted by Crocs's patents.

384.     Crocs has informed Joybees that it has monitored, and is continuing to monitor, Joybees' business practices and product lines for potential intellectual property infringement.

385.     Joybees, believing Crocs to still hold enforceable patent rights as a direct result of Crocs's false representations that the Falsely Marked Products were protected by enforceable U.S. patent rights, has delayed or forgone launches of lawfully competing products, which conferred an unwarranted advantage upon Crocs.

386.     Joybees, believing Crocs to still hold enforceable patent rights as a direct result of Crocs's false representations that the Falsely Marked Products were protected by enforceable U.S. patent rights, has invested in alterative designs, which conferred an unwarranted advantage upon Crocs.

387.     Joybees, believing Crocs to still hold enforceable patent rights as a direct result of Crocs's false representations that the Falsely Marked Products were protected by enforceable U.S. patent rights, has expended resources seeking clearance opinions, which conferred an unwarranted advantage upon Crocs.

388.     Upon information and belief, Crocs's false and misleading representations related to its intellectual property rights are intended to prevent legitimate competitors, including Joybees, from selling competing products and business opportunities that may decrease Crocs's market share.

389.     Upon information and belief, Crocs's false and misleading representations related to its intellectual property rights are intended to cause legitimate competitors, including Joybees, to suffer reputational harm and damage their goodwill among distributors and retailers.

390.     Upon information and belief, Crocs's false and misleading representations related to its intellectual property rights are intended to cause legitimate competitors, including Joybees, to expend resources to counter Crocs's false claims of innovation and exclusivity.

391.     Upon information and belief, Crocs's false and misleading representations related to its intellectual property rights are intended to cause, and have caused, legitimate competitors, including Joybees, to suffer revenue declines from lost sales.

### Consumer Deception

392.     Consumers reasonably interpret representations that a product is patented as an indicator that such product embodies a novel, proprietary technology protected by an enforceable patent.

393.     Crocs's claims, including on the Crocs IP Lookup Page, that its Falsely Marked Products are patented conveys to consumers that such products are the original, authentic, or exclusive version.

394.     As a direct and proximate result of Crocs's false representations that the Falsely Marked Products are patented, consumers are led to believe that other similar products lawfully offered by competitors, including Joybees, are copies, dupes, or knockoffs that violate Crocs's

enforceable patent rights.

395.   Crocs reinforces the false impression that products offered by competitors, including Joybees, are unauthorized imitations of the Falsely Marked Products through Crocs's marketing efforts, which use the phrase "dupes" to refer to competitor products, including Joybees, and its legal enforcement efforts, which include the use of the phrase "knock-offs" to refer to competitor products including Joybees, and phrases such as "innovative" to refer to Crocs's footwear products.

396.   Consumers, believing the Falsely Marked Products to be protected by enforceable patent rights, are more likely to purchase Crocs's Falsely Marked Products and less likely to consider functionally equivalent alternatives, such as Joybees' products.

397.   By falsely representing the Falsely Marked Products are patented, Crocs misleads consumers into believing that the Falsely Marked Product is technologically unique or superior to alternative products, including Joybees' products.

398.   By falsely representing the Falsely Marked Products are patented, Crocs misleads consumers into believing that Crocs continues to possess exclusive rights that prevents competitors like Joybees from lawfully selling similar products.

399.   By falsely representing the Falsely Marked Products are patented, Crocs misleads consumers into believing that that the price premium associated with its "patented" footwear products is justified.

400.   Crocs's false representations that the Falsely Marked Products are patented influence purchasing decisions and diverts sales away from competitors like Joybees that offer lawfully competing products.

401.   Upon information and belief, Crocs's false representations that the Falsely Marked

Products are patented have materially influenced consumer and retailer purchasing decisions; diverted sales to Crocs and away from competitors like Joybees; created market confusion regarding EVA footwear products, including ones made by Joybees; and impaired competition for EVA footwear products.

402.    Crocs's false representations that the Falsely Marked Products are patented harm the consuming public by restricting choice, maintaining artificially high prices, and undermining the public's confidence in the integrity of the patent system.

403.    Crocs's false representations that the Falsely Marked Products are patented attempt to perpetuate Crocs's monopoly beyond the statutory term of Crocs's patent rights.

404.    Through its expired-patent claims and prior enforcement behavior, Crocs has manufactured a stigma around similar products offered by competitors, including Joybees, by implying that competing products are a "dupe" of the Falsely Marked Products that violate Crocs's enforceable patent rights, rather than legitimate, lawful alternatives.

405.    Crocs benefits from the consumer false perception that the Falsely Marked Products are patented by preserving brand dominance and discouraging consumers from considering lower-price lawfully competing alternatives, including Joybees' products.

406.    Crocs's continued exploitation of its expired patent rights perpetuates consumer deception and allows Crocs to maintain consumer loyalty based on false exclusivity and the illusion of authenticity.

### Willful Conduct

407.    Crocs has over 20 years of experience with obtaining and litigating patents.

408.    Crocs is aware of the limited duration of its patents.

409.    In its 2024 10-K Report, Crocs acknowledged that the average term of its patents

is 20 years.

410.     Upon information and belief, Crocs monitors its patent portfolio closely. In its 2024 10-K Report, Crocs stated it continuously monitors its intangible assets, including its patents, and evaluates for impairment when evidence exists of changes in circumstances.

411.     The date of expiration of Crocs's U.S. patents is public record.

412.     Despite evidence of expiration in the public records, Crocs represented that its products are patented and protected by expired patents in its product packaging and on its website, including the Crocs IP Lookup Page, well after the date that its patents expired or were invalidated.

413.     Upon information and belief, one of the reasons that Crocs utilizes a database that can be queried on the Crocs IP Lookup Page is to make it easier for Crocs to keep the information on the Crocs IP Lookup Page accurate and up to date.

414.     Upon information and belief, at least as a result of other litigation in which it is involved, Crocs has been on notice of the risk of consumer deception that can result from Crocs's dissemination of inaccurate patent information since at least as early as October 2024.

415.     Crocs was on notice of the risk of competitor harm that can result from Crocs's referring to competitor products as "dupes" or "knockoffs."

416.     Upon information and belief, Crocs's conduct in representing that the Falsely Marked Products are protected by expired patents is willful.

417.     Upon information and belief, Crocs knew that the marking language used with its Falsely Marked Products would prevent competitors, including Joybees, from readily determining whether Crocs's products were covered by active patent rights.

418.     Upon information and belief, Crocs knowingly leveraged its expired patents to maintain dominance in the marketplace and to intimidate competitors through the appearance of

enforceable exclusivity.

419.     Upon information and belief, by representing the Falsely Marked Products are patented and protected by patent rights in the U.S. after the date of expiration of such patents, Crocs deliberately leveraged its prior reputation as a strict enforcer to amplify the chilling effect of its false patent claims.

420.     Upon information and belief, Crocs's marking of the Falsely Marked Products with expired patents was made with the intent to mislead consumers in the U.S. into believing that Crocs's footwear products are protected by an active U.S. patent.

421.     Upon information and belief, Crocs's marking of the Falsely Marked Products with expired patents was made with the intent to mislead competitors in the U.S., including Joybees, into believing that the Falsely Marked Products are protected by an active U.S. patent.

422.     Upon information and belief, Crocs's marking of the Falsely Marked Products with expired patents was made with the intent to mislead retailers in the U.S. into believing that the Falsely Marked Products are protected by an active U.S. patent.

## FIRST CLAIM FOR RELIEF
### (False Advertising in Violation of Lanham Act, 15 U.S.C. § 1125)

423.     Joybees incorporates by reference the allegations of paragraphs 1 through 422 as if fully set forth herein.

424.     The Crocs IP Lookup Page and the hang tags constitute commercial advertising or promotion under Section 43(a)(1)(B) of the Lanham Act because they are commercial speech that Crocs—which is in commercial competition with Joybees—uses for the purpose of attracting customers to Crocs's products and the Crocs brand and to encourage consumers to buy Crocs's products.

425.     The Crocs IP Lookup Page and the hang tags constitute commercial speech because

Crocs uses them to advertise to the public—including consumers, retailers, distributors, and competitors alike—that Crocs's products are covered by patents and exclusive to Crocs.

426.    Upon information and belief, Crocs's motivation for using the Crocs IP Lookup Page and the hang tags to advertise its products are covered by patents is to influence consumers to buy Crocs's "patent-protected" products over a competitor's products.

427.    Upon information and belief, Crocs's use of the Crocs IP Lookup Page and the hang tags is driven by Crocs's economic interests and is therefore commercial speech. There is no educational, political, research, or opinion-related purpose to the speech contained in Crocs's IP Lookup Page or in Crocs's hang tags.

428.    The hang tags that direct readers to the Crocs IP Lookup Page are affixed to Crocs's footwear products that are available for sale in the market. As a result, consumers can see the hang tags and can visit the Crocs IP Lookup Page prior to purchasing the products, and the hang tags are often the last point of sale advertisement a consumer sees prior to making their purchasing decision.

429.    Because the hang tags are affixed to Crocs's footwear products being offered for sale, and because the Crocs IP Lookup Page is a public website that is easily accessible to the general public, the speech contained therein is broadly disseminated in interstate commerce to the relevant purchasing public.

430.    By falsely representing through the hang tags together with the Crocs IP Page that the Falsely Marked Products are patented in the U.S. and selling such products in the U.S., Crocs made a literally false representation of fact in the commercial advertising and sale of its products.

431.    Crocs's false statements that the Falsely Marked Products are covered by active patents in the U.S. misrepresent the nature, characteristics, and qualities of Crocs's products to

consumers in the U.S.

432.    Crocs's false statements that Joybees' products are "dupes" of the Falsely Marked Products misrepresent the nature, characteristics, and qualities of Joybees' products.

433.    Crocs's false and misleading representations that the Falsely Marked Products are covered by U.S. patents are material and are likely to influence the purchasing decision of the consuming public.

434.    Upon information and belief, Crocs's false representations that the Falsely Marked Products are covered by U.S. patents are intended to influence the purchasing decision of the consuming public.

435.    Crocs's false representations that the Falsely Marked Products are covered by U.S. patents have the tendency to deceive a substantial segment of the consuming public.

436.    Upon information and belief, Crocs's false representation that the Falsely Marked Products are covered by U.S. patents have actually deceived a substantial segment of the consuming public.

437.    Crocs has placed false statements and misleading representations that the Falsely Marked Products are covered by enforceable patent rights in the U.S. in interstate commerce in the U.S.

438.    Crocs's actions have violated Section 43(a)(1)(b) of the Lanham Act, 15 U.S.C. § 1125(a).

439.    As a direct and proximate result of Crocs's false and misleading representations, Joybees has suffered and will continue to suffer irreparable harm in an amount not as yet ascertainable, thereby entitling Joybees to recover its actual damages and costs, as well as Crocs's profits, pursuant to 15 U.S.C. § 1117(a).

440.     As a direct and proximate result of Crocs's false and misleading representations, Joybees has suffered lost sales and business opportunities.

441.     As a direct and proximate result of Crocs's false and misleading representations, Joybees has suffered harm to its reputation and goodwill among distributors and retailers.

442.     As a direct and proximate result of Crocs's false and misleading representations, Joybees has had to expend resources and delay or forego new product launches.

443.     As a direct and proximate result of Crocs's false and misleading representations in Crocs's digital marketing promotional email campaign comparing Crocs's footwear product to Joybees' Active Clog, Joybees' revenue has declined.

444.     Crocs's false representations are willful, wanton, and without any claim of right, thereby entitling Joybees to treble the amount of damages suffered and render this an exceptional case, entitling Joybees to recover its attorneys' fees, pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF
### (Deceptive Trade Practices in Violation of Colorado Consumer Protection Act, C.R.S. § 6-1-105)

445.     Joybees incorporates by reference the allegations of paragraphs 1 through 444 as if fully set forth herein.

446.     Crocs engaged in unfair and deceptive trade practices by making false and misleading representations that its Falsely Marked Products are covered by expired patents.

447.     Crocs engaged in unfair and deceptive trade practices by making false and misleading representations that its footwear products are covered by expired design registrations.

448.     Crocs acted in bad faith in falsely promoting the Falsely Marked Products as covered by patents that were expired.

449.     Crocs's actions occurred in the course of Crocs's business.

450.     Crocs's actions in falsely marketing its Falsely Marked Products as patented

significantly impacts the public as actual or potential consumer of Crocs's products.

451.    Joybees' legally protected interest in selling its products has been damaged as a direct result of Crocs's unfair and deceptive trade practices.

452.    As a direct and proximate result of Crocs's unfair and deceptive trade practices, Joybees has suffered damages in an amount to be proven at trial and is entitled to appropriate fees and penalties as set forth in the operative statute.

**Wherefore** Joybees respectfully requests this Court enter an Order and Judgment in its favor and against Crocs on Joybees causes of action, and:

1.    Adjudge and decree that Crocs is liable for material false representations in violation of 15 U.S.C. § 1125(a);

2.    Adjudge and decree that Crocs is liable for deceptive trade practices in violation of C.R.S. § 6-1-105;

3.    Issue a permanent injunction ordering that Crocs, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation therewith refrain from directly or indirectly using in commerce or causing to be published or otherwise disseminated any materials or activities containing any claim that the Falsely Marked Products are "Patented" or "may be Patented" in the United States or any similar false representation;

4.    Issue a permanent injunction directing Crocs to place appropriate corrective advertisements, reasonably designed to reach all persons to whom Crocs's false and misleading advertisements and communications were directly or indirectly disseminated, and retracting the false, misleading, and unfair claims contained therein;

5.    Adjudge and decree that this is an "exceptional case" due to the willful nature of

Crocs's misleading and false representations;

6. Award Joybees the disgorgement of Crocs's wrongfully procured profits and any damages sustained by Joybees, and that such damages be trebled pursuant to 15 U.S.C. § 1117;

7. Award Joybees damages in an amount to be determined at trial, and that such damages be trebled pursuant to C.R.S. 6-1-113;

8. Award Joybees its costs, expert witness fees, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and C.R.S. 6-1-113;

9. Award Joybees pre- and post-judgment interest on all sums allowed by law; and,

10. Award Joybees any such other and further relief as the Court may deem just and equitable.

## A JURY TRIAL IS REQUESTED.

Dated: December 17, 2025.                          Respectfully submitted,

KUTAK ROCK LLP


By: *s/ Chad T. Nitta*
    Chad T. Nitta, #31921
    Shelby L. Morbach, #55913
    Heather N. Tilley, #54149
    Chad.Nitta@kutakrock.com
    Shelby.morbach@kutakrock.com
    Heather.tilley@kutakrock.com

2001 16th Street
Suite 1800
Denver, CO  80202-5292
Telephone:    (303) 297-2400
Facsimile:    (303) 292-7799

Attorney for Plaintiff
Joybees LLC